UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN WILLIAMS,

        Plaintiff,                       Case No. 1:20-cv-173

v.                                         Honorable Paul L. Maloney

MARGARET A. OUELLETTE et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues LCF employees

Physician Assistant Margaret A. Ouellette, Nurse Practitioner Suzanne E. Groff, and Dr. Suzanne Hawkins; Corizon Health Services employee Dr. Unknown Coleman; and Unknown Part(y)(ies).

Plaintiff alleges that Defendants have refused him adequate medical treatment to address his nerve damage and the pain associated with it. According to Plaintiff, Defendant Ouellette performed a screening with him at his initial intake visit at LCF on September 13, 2018. During the screening, Ouellette declined to examine Plaintiff's specific neurology issues, but she indicated that she would examine Plaintiff at his next semiannual chronic care visit. Although Plaintiff alleges Ouellette "refus[ed] to provide or administer any medical treatment" (Compl., ECF No. 1, PageID.7), documents Plaintiff attached to his complaint show that Ouellette ordered special accommodations for Plaintiff (ECF No. 1-2, PageID.29).

On April 30, 2019, Defendant Groff examined Plaintiff and prescribed Cymbalta[1] to reduce the severity of Plaintiff's nerve pain. Groff also ordered special accommodations for Plaintiff. Plaintiff alleges that the Cymbalta never alleviated his pain. Instead, Plaintiff apparently stopped taking Cymbalta after only three days because he experienced an allergic reaction to the medication.

Defendant Hawkins met with Plaintiff for a health care appointment on July 30, 2019. Like Ouellette and Groff, Hawkins ordered special accommodations. Hawkins further ordered that Plaintiff be seen by an off-site neurologist (not a defendant), and the neurologist examined Plaintiff on September 4, 2019. According to the neurologist report, which Plaintiff attached to the complaint, Plaintiff reported "shooting pain, discomfort, . . . and tingling" that had "started 10-11 years ago . . . since he was diagnosed with edema." (ECF No. 1-3, PageID.31.) The report further indicates that the condition has progressed as his blood pressure has risen. The

---

[1] Plaintiff refers to a drug "Symbolta." (Compl., ECF No. 1, PageID.9.) The Court will interpret this as Cymbalta.

2

symptoms also increased in severity when Plaintiff retained water. Plaintiff had stated that he suffered from radiculopathy and Type 2 diabetes mellitus with diabetic neuropathy. Plaintiff had further reported that he was taking six different medications. The neurologist's diagnosis was that Plaintiff suffered from diabetic neuropathy and radiculopathy—just as Plaintiff had asserted. The neurologist did not order any diagnostic tests or prescribe any therapies. He stated, "[d]iscussed with the patient our findings and recommended follow up with PCP for further recommendations." (*Id.*, PageID.33.)

At some point on September 4, 2019, Plaintiff sent Groff an "emergency medical kite marked urgent . . . requesting to be seen immediately concerning [Plaintiff's] allergic reaction to the [Cymbalta] she had prescribed on 4/30/2019." (Compl., ECF No. 1, PageID.9.) Groff apparently was unaware of the kite and did not see Plaintiff until November 2, 2019.

On November 2, 2019, Groff again met with Plaintiff. Plaintiff alleges that Groff informed him that she had not received his September 4 kite, and she was unaware that Plaintiff had an allergic reaction to Cymbalta in early May. Groff prescribed Plaintiff Celebrex. However, Plaintiff alleges that Groff "stated that this drug [would] not alleviate the severity of Plaintiff['s] pain," and that Plaintiff must try Celebrex before she could prescribe a stronger pain medication. (Compl., ECF No. 1, PageID.10.) Groff also informed Plaintiff that she had submitted a request that Plaintiff receive an MRI, but that request was denied by Defendant Coleman on October 10, 2019. Groff further indicated that she would submit two new requests for Plaintiff's care: physical therapy at MDOC's Duane Waters Health Center (DWH) and another consultation with the off-site neurologist to formulate a treatment plan. The complaint does not indicate whether Plaintiff received any physical therapy at DWH, but documents attached to the complaint indicate that Plaintiff had been scheduled for a follow-up with the off-site neurologist.

3

Plaintiff alleges that Defendants intentionally ignored Plaintiff's pain, and that consequently, Defendants have been deliberately indifferent to his medical needs in violation of the Eighth Amendment. For relief, Plaintiff seeks $1.7 million in compensatory damages, as well as punitive damages, costs, attorney's fees, and injunctive relief that would provide him with specific medical interventions including a prescription for tramadol (100mg three times per day), a TENS unit, and spinal injections or non-invasive surgery.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.     Unknown Part(y)(ies)

Plaintiff alleges that "unknown John and Jane Doe #1-#20 should be held responsible for the denial of that MRI . . . ." (Compl., ECF No. 1, PageID.13.) At no other point does Plaintiff reference Unknown Part(y)(ies), nor does he identify what actions they may have taken.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims

5

where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Unknown Part(y)(ies) in the body of his complaint beyond the single, vague reference that they "should be held responsible for the denial of that MRI." (Compl., ECF No. 1, PageID.13.)

Consequently, Plaintiff's allegations against Defendant Unknown Part(y)(ies) falls far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Plaintiff's complaint against Defendant Unknown Part(y)(ies).

### IV. Denial of Medical Treatment

Plaintiff asserts that the remaining Defendants were deliberately indifferent to Plaintiff's serious medical needs because they allegedly failed to treat his nerve pain.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such

care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d

8

561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d at 169). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Although Plaintiff states that he has been denied medical care, he clearly challenges only the adequacy of his treatment. Defendants Ouellette, Groff, and Hawkins examined Plaintiff and ordered accommodations for him including weight restrictions on work details and assignments to the bottom bunk in housing units. They further ordered medical equipment including Thrombo-Embolic Deterrent (TED) hosiery and special athletic shoes for Plaintiff. Defendant Groff prescribed both Cymbalta and later Celebrex for Plaintiff to alleviate his pain. Defendant Hawkins ordered a consultation with an off-site neurologist. Notwithstanding the care Defendants provided him, Plaintiff contends that he should have received an MRI and presumably that he should have received a medication like tramadol rather than Cymbalta or Celebrex.

However, refusing to provide an MRI does not give rise to a deliberate indifference claim. The plaintiff in *Estelle v. Gamble* complained of back pain. *Estelle*, 429 U.S. at 107. The doctors treated inmate Gamble with bed rest, muscle relaxants, and pain relievers. Gamble wanted additional diagnostic tests and forms of treatment to alleviate his back pain. The Supreme Court concluded Gamble had failed to state a claim:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel

9

and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

*Estelle*, 429 U.S. at 107. Courts have routinely relied on *Estelle* to conclude that failure to order an MRI is not deliberate indifference. *See, e.g.*, *Riddick v. Maurer et al.*, 730 F. App'x 34 (2d Cir. 2018); *Dykeman v. Ahsan*, 560 F. App'x 129 (3d Cir. 2014); *Laws v. Wexford Health Sources, Inc.*, 721 F. App'x 544 (7th Cir. 2018); *Tucker v. Meyer*, 165 F. App'x 590 (10th Cir. 2006); *Owen v. Corizon Health, Inc.*, 703 F. App'x 844 (11th Cir. 2017); *Thompson v. Corr. Med. Servs.* No. 09-14483, 2016 WL 1118639 (E.D. Mich. Mar. 21, 2016); *Brooks v. Jones*, 1:14-cv-631, 2014 WL 7212897 (W.D. Mich. Dec. 17, 2014).

The same reasoning applies with respect to any difference of opinion between Plaintiff and his medical providers regarding the potency of the pain relievers prescribed. The Sixth Circuit considered the difficult choices faced by medical providers when considering the possibility of prescribing narcotic medication:

> [T]he treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test. Instead of weighing a single alleged risk of harm, against which the adequacy of official action can be judged, a reviewing court is asked to pass judgment on the attempts by prison medical staff to navigate between the Scylla of debilitating pain and the Charybdis of addiction to prescription drugs.
>
> There are occasions when an official has a subjective, good-faith belief that a particular response to a prisoner's substantial risk of serious harm might either 1) fail to mitigate the risk or 2) create or enable a different substantial risk of serious harm to the prisoner. In those situations, an official's decision not to authorize that particular response cannot be considered an act of deliberate indifference, and we are mindful of the possibility that a reasonable response to a risk may not be able to avert the ultimate harm. *See Farmer*, 511 U.S. at 844. These scenarios most commonly occur within the context of medical treatment, which is why both the Supreme Court and this court have rejected Eighth Amendment claims that second-guess the medical judgments of medical personnel. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Graham* [*ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)].

> In a series of recent unpublished decisions, this court has rejected a number of claims similar to those in Baker's complaint. In *Brock v. Crall*, 8 F. App'x. 439, 441 (6th Cir. 2001), we ruled that an Eighth Amendment complaint failed to state a proper claim for relief where the primary allegation was that two doctors failed to diagnose and treat a lower back ailment. In *Moses v. Coble*, 23 F. App'x. 391, 392 (6th Cir. 2001), where a prisoner alleged that he suffered pain from his serious back problems due to defendants' refusal to provide anything beyond over-the-counter pain medication, we affirmed the dismissal of the complaint as "clearly frivolous."

*Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015); *see also Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) ("Mabry's claim against Dr. Antonini is merely a complaint that he did not order specific tests, or provide specific medications, treatment, or dosages. Such an assertion does not state a constitutional claim of deliberate indifference as to serious medical needs."); *Clark v. Frontera*, No. 2:06-cv-40, 2008 WL 3833407, at *5 (W.D. Mich. Aug. 13, 2008) ("In this case, Plaintiff was receiving Tylenol for his back pain, but claimed that he required stronger medication to relieve his pain . . . such claims do not rise to the level of an Eighth Amendment violation.").

Plaintiff's allegations show a continued course of treatment. Moreover, despite Plaintiff's complaints that he has suffered as a result of the Plaintiff's care, the neurologist who examined Plaintiff recommended only that Plaintiff follow up with his primary care providers for their continued recommendations. The neurologist did not specify further tests or interventions that were needed. Consequently, none of Defendants' treatment decisions before or after Plaintiff's appointment with the neurologist contravened his recommendations. The treatment Defendants afforded Plaintiff here is a far cry from deliberate indifference to Plaintiff's serious medical needs. Thus, Plaintiff has failed to state an Eighth Amendment claim against Defendants Ouellette, Groff, Hawkins, and Coleman.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 25, 2020                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge